UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL LEE SPENCE,

            Plaintiff,                Case No. 2:18-cv-13625
                                            District Judge Terrence G. Berg
v.                                   Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

            Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR SENTENCE SIX REMAND (ECF No. 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14) and AFFIRM THE COMMISSIONER'S DECISION

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment

(ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

       Plaintiff, Karl Lee Spence, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for Disability Insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 11), the Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 15) and the administrative record (ECF No. 9).

### A.    Background and Administrative History

Plaintiff alleges his disability began on December 15, 2015, at the age of 53. (R. at 146, 164.)  He filed an application for disability insurance benefits (DIB) on June 2, 2016 (R. at 74.)  In his disability report, he lists back injury, severe lower/mid back issues and depression as limiting his ability to work.  (R. at 168.) His application was denied on September 9, 2016.  (R. at 64-73.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 88-89.)  On February 27, 2018, ALJ Paul W. Jones held a hearing, at which Plaintiff and a vocational expert (VE), Amelia Shelton, testified.  (R. at 32-63.)  On June 28, 2018, ALJ Jones issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 17-31.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 145.)  However, on October 4, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-9.)  Thus, ALJ Jones's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on November 20, 2018.

### B.    Plaintiff's Medical History

2

The administrative record contains approximately 46 pages of medical records, which were available to the ALJ at the time of his June 28, 2018 decision. (R. at 31, 222-268 [Exhibits 1F-5F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2015, the alleged onset date.  (R. at 22.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease status post-surgery and obesity.  (R. at 22.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 23.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that Plaintiff had the RFC:

> . . . to perform light work . . . except he can occasionally stoop, and climb ropes, ladders, or scaffolds; frequently climb ramps and stairs, balance, kneel, crouch, crawl [*i.e. exertional limitations*].

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(R. at 23.)  At **Step 4**, the ALJ determined that Plaintiff was able to perform past

relevant work as an assistant manager in auto parts retail and as an auto parts sales

clerk.  (R. at 26-27.)  The ALJ therefore concluded that Plaintiff had not been

under a disability, as defined in the Social Security Act, since December 15, 2015.

(R. at 27.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff alleges: (1) that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider the limiting effects of Plaintiff's obesity or give sufficient weight to the treating physician's

opinion; and (2) the Appeals Council should have remanded under Sentence Six to allow the ALJ to consider the results of an MRI taken after the hearing.  (ECF No. 11, PageID.316-326; ECF No. 15, PageID.359-364.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision, and that Plaintiff is not entitled to remand for consideration of the post-hearing MRI results.  (ECF No. 14, PageID.340-356.)  Plaintiff's reply brief is also acknowledged.  (ECF No. 15.)  I will address each argument in turn.

### 1.   RFC Determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146 (6th Cir. 1990) and *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Pursuant to Social Security Rule (S.S.R.) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p at *7.  "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

### a.   Obesity

7

Plaintiff asserts first that the ALJ's RFC determination is not supported by substantial evidence because "[t]he ALJ failed to give sufficient weight to the limitations from Plaintiff's severe impairment of obesity," despite finding "it to be a severe impairment at Step 2 of his decision." (ECF No. 11, PageID.318-320; ECF No. 15, PageID.359-360.) The regulations define obesity using body mass index (BMI). For adults, "the Clinical Guidelines describe a BMI of 25-29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'" S.S.R. 02-1p.[2]

"'Social Security Ruling 02-01p does not mandate a particular mode of analysis,' but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006)). The burden is on Plaintiff to show "how the obesity, in combination with other impairments, limited [his] ability to a degree inconsistent with the ALJ's RFC determination." *Smith v. Astrue*, 639 F. Supp. 2d 836, 846-47 (6th Cir. 2009).

Here, the ALJ properly considered Plaintiff's obesity, at all stages of the sequential evaluation and in combination with Plaintiff's other impairments, and substantial evidence supports the ALJ's determinations. Thus, Plaintiff failed to

---

[2] S.S.R. 02-1p was rescinded effective May 20, 2019, but was in effect at the time Plaintiff filed his claim.

meet his burden of demonstrating how his obesity, in combination with his degenerative disc disease (R. at 22), limited his ability to a degree inconsistent with the ALJ's RFC determination.  *Smith*, 639 F. Supp. 2d at 846-47.

The ALJ found that Plaintiff had a BMI of 43 to 44 (R. at 25, 227, 232 [Exhibit 1F]), and accordingly found Plaintiff's obesity to be a severe impairment at Step 2 (R. at 22).  At Step 3, the ALJ stated:

> Obesity and its effects are considered when evaluating disability as the combined effects of obesity can increase the effects of other impairments (SSR 02-1p).  While claimant's obesity could increase the stress on his body and thus contribute to his pain, there is no medical evidence of record of any specific impact on the pain levels or claimant's function as a result of his weight or body habitus.  Therefore, I find that even when the effects of obesity are taken into consideration, claimant does not meet the requirements of any listing.

(R. at 23.)  Finally, the ALJ considered the impact of Plaintiff's obesity on his RFC, stating:

> Claimant has a body mass index (BMI) of 43 to 44.  (1F/2, 6, 11).  A BMI of 30 or greater is considered obese.  I considered limitations that may result from claimant's obesity, in accordance with SSR 02-1p.  I find that the RFC defined above accounts for any limitations that claimant may have as a result of this impairment.  It is notable that claimant's treatment providers have not noted in his medical record that claimant is impaired functionally in any way by his obesity.  His doctor did advise him to lose weight through diet and exercise.  (1F/7).  *However, I limited claimant to reduced postural activities, in part as a result of obesity.*

(R. at 25) (emphasis added).

9

Plaintiff asserts in his summary judgment motion that the ALJ did not properly consider the effect of his obesity on his degenerative disc disease and "failed to discuss what impact, if any, plaintiff's obesity may have had on this impairment or on plaintiff's residual functional capacity." (ECF No. 11, PageID.318-320; ECF No. 15, PageID.359-360.)  But he fails to cite to any evidence in the record connecting his obesity to specific functional limitations, citing only to the advice of nurse practitioner Tracy L. Bradstreet that he lose weight to reduce his back pain, which the ALJ acknowledged in his RFC determination (R. at 25, 224); nor does he specify in his motion or memorandum in support how his obesity creates limitations that would justify a more restrictive RFC.  *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (finding that the ALJ adequately considered the impact of the plaintiff's obesity when he reasoned "'degenerative disc disease of the lumbar spine, obesity, hypertension, and major depressive disorder, can reasonably be expected to result in some degree of functional physical and mental limitations,'" because "[t]he absence of further elaboration on the issue of obesity likely stem[med] from the fact that [plaintiff] failed to present some evidence of any functional limitations resulting specifically from her obesity."); *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) ("We also reject Forte's argument that the ALJ erred in failing to consider his obesity in assessing his RFC.  Although his treating doctors noted that

10

Forte was obese and should lose weight, none of them suggested his obesity imposed additional work-related limitations, and he did not testify that his obesity imposed additional restrictions.").  And it is not the Court's obligation to scour the record to assist Plaintiff in supporting his arguments.  *Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted). Accordingly, Plaintiff failed to sustain his burden of showing how his obesity limited his ability to a degree inconsistent with the ALJ's RFC determination. *Smith*, 639 F. Supp. 2d at 846-47.

Moreover, an examination of the record confirms the ALJ's finding of a lack of evidence, medical or otherwise, identifying any functional impairments resulting from Plaintiff's obesity.  The notation by nurse practitioner Bradstreet states only, "Advise weight reduction, daily stretching and exercises."  (R. at 224 [Exhibit 1F].)  At the hearing, in response to the ALJ's question of whether Plaintiff's back and weight were causing him the most difficulty, Plaintiff said, "Affecting me, yes, sir."  (R. at 52.)  But he failed to elaborate any further, and in his very limited examination, Plaintiff's counsel did not question his client on the subject of his weight.  (R. at 56-59.).  Moreover, as Defendant points out, the ALJ adopted the light RFC and postural activity limitations recommended by Dr. Larry Jackson, the

State agency reviewing physician (R. at 25), whose own opinion took into consideration Plaintiff's obesity (*see* R. at 64-73 [Exhibit 1A]).  And finally, the ALJ specifically took Plaintiff's obesity into account when he limited Plaintiff to reduced postural activities.  (R. at 25.)  While Plaintiff argues that the ALJ "failed to give *sufficient weight* to the limitations" from his "severe impairment of obesity," (ECF No. 11, PageID.318) (emphasis added), he has failed to demonstrate legal error and this Court will not re-weigh the evidence in his favor. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  The ALJ "consider[ed] the claimant's obesity, in combination with other impairments" throughout the sequential analysis.  *Nejat*, 359 F. App'x at 577.  Thus, the Court should conclude that the ALJ properly accounted for Plaintiff's obesity in his RFC determination.

### b.    Opinion of Treating Physician

Plaintiff next argues that the ALJ "committed legal error in not according any weight to the treating physician's evaluation summary limitations and in failing to review the required factors in 20 C.F.R. § 404.1527(d)(2)."  (ECF No. 11, PageID. 320-325; ECF No. 15, PageID.360-362.)  Further, citing S.S.R. 96-5p, Plaintiff asserts that the ALJ should have recontacted Dr. John Allen, his treating physician, because an ALJ "must" do so "when the evidence does not support the treating source's opinion and the adjudicator cannot ascertain the basis of the

opinion from the record."  (ECF No. 11, PageID.322-323; ECF No. 15,

PageID.361.)

### i.      Legal framework

The ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case.  20 C.F.R. § 416.927(b).[3]  The regulations define

medical opinions as "statements from acceptable medical sources . . . that reflect

judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(1).  ALJs "will

consider . . . administrative medical findings and medical evidence from our

Federal or State agency medical or psychological consultants . . . [,]" but "are not

required to adopt any prior administrative medical findings[.]"  20 C.F.R. §§

404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source

"since these sources are likely to be the medical professionals most able to provide

a detailed, longitudinal picture of [a patient's] medical impairment(s) and may

bring a unique perspective to the medical evidence that cannot be obtained from

the objective medical findings alone . . . ."  20 C.F.R. § 416.927(c)(2); *Blakley*, 581

F.3d at 408.

---

[3] This regulation applies to claims filed before March 27, 2017.

> Medical opinions from treating sources about the nature and severity
> of an individual's impairment(s) are entitled to special significance
> and may be entitled to controlling weight.  If a treating source's
> medical opinion on an issue of the nature and severity of an
> individual's impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent
> with the other substantial evidence in the case record, the adjudicator
> must give it controlling weight.

S.S.R. 96-8p at *7.  In other words, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors – namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source – in determining what weight to
> give the opinion.

*Id*. *See also* 20 C.F.R. § 404.1527(c).[4]

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating

---

[4] This rule applies to claims filed before March 27, 2017.

14

source's opinion," 20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547).  *See also Betty v. Comm'r of Soc. Sec.*, No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report*

*and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544-45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

### ii.    10-pound lifting restriction

Plaintiff asserts that the ALJ afforded little weight to the opinion of his treating physician, Dr. John Allen, D.O., and discounted the opinion without applying the appropriate *Wilson* factors. (ECF No. 11, PageID.320-325; ECF No. 15, PageID.360-362.) The only opinion evidence from Dr. Allen referred to in Plaintiff's summary judgment motion is the report from a single office visit in 2015. According to that record, Plaintiff presented to Dr. Allen with moderate to

16

severe back pain on May 4, 2015. (R. at 231 [Exhibit 1F].)[5] Dr. Allen diagnosed

Plaintiff with a *back strain or sprain* and recommended the following patient plan:

"Do not lift anything over 10 pounds. Do stretching exercises as directed. Aplly

[sic] warm moist heat 4 to 6 times per day for at least 15 minutes. Call if you loose

[sic] controll [sic] of your bladder or bowels." (R. at 233 [Exhibit 1F]; *see also* R

at 61-62.) Further, Dr. Allen ordered Plaintiff to schedule a follow-up visit if his

symptoms did not improve in one week. (R. at 233 [Exhibit 1F].) However,

Plaintiff, according to the record and his own admissions, did not seek treatment

for his back again until June 2016, thirteen months later. (R. at 226-230, 234-235

[Exhibit 1F].)

It is the 10-pound lifting limitation that Plaintiff appears to assert is the

opinion of Dr. Allen the ALJ should have more closely considered and adopted

when determining Plaintiff's RFC. But the Court should conclude that the ALJ

provided good reasons for discounting Dr. Allen's opinion, and adequately applied

the *Wilson* factors. *Wilson*, 378 F.3d at 544; 20 C.F.R. §§ 404.1527(c), 416.927(c).

In discounting Dr. Allen's 10-pound lifting limitation, the ALJ

acknowledged the requirements of 20 C.F.R. § 404.1527 (R. at 23), despite

Plaintiff's assertion to the contrary, and reasoned:

_____

[5] The parties cite May 5, 2015, as the date of the visit, but that is the date Dr. Allen
electronically signed the record.

> I give little weight to the opinion of claimant's treating doctor John Allen, D.O., as his opinion that claimant lift no more than ten pounds appears to be a temporary guideline. (1F/12). Dr. Allen assessed claimant as having a sprain or strain of his back and directed claimant to treat it accordingly with stretching, limit lifting, and heating it. (1F/12). I also note that this assessment was given in May 2015, months before his alleged onset date in December 2015 and more than a year before his unemployment benefits period ended when he testified he was capable of working. In addition, Dr. Allen is claimant's PCP, not an orthopedic specialist. Finally, claimant was instructed to return in one week if he did not improve; however, claimant did not return to Dr. Allen until over a year later in June 2016, so it can be inferred that his back improved during that time.

(R. at 24-26.)

Thus, the ALJ took into consideration the nature and extent of Plaintiff's treatment relationship and the doctor's specialization, as well as the infrequency of examination. In so doing, he found that Dr. Allen diagnosed Plaintiff with a back sprain or strain, and that despite the instruction to return in a week if symptoms continued, Plaintiff did not seek treatment for his back again until over a year later (R. at 25-26), both of which are supported by the record (R. at 226-235 [Exhibit 1F]). From this evidence, in combination with Dr. Allen's seemingly minor treatment recommendations, the date of the doctor visit, and Plaintiff's testimony at the hearing that he continues to perform general household chores, the ALJ could infer, as he did, that Dr. Allen's 10-pound lifting limitation was a temporary guideline, no longer applicable at the time of the RFC determination. *See Tate v.*

18

*Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (substantial gaps in treatment may be considered when weighing a treating physician's opinion).

### iii.    Unemployment benefits

The ALJ's consideration that Plaintiff received unemployment benefits for more than a year after his May 2015 appointment with Dr. Allen should not alter the Court's conclusion.  (*See* R. at 40-41.)  It is not error for an ALJ to consider a plaintiff's receipt of unemployment benefits as part of his or her disability determination.  *See Reilly v. Comm'r of Soc. Sec.*, No. 1:13-CV-1096, 2015 WL 1459509, at *1-2 (W.D. Mich. Mar. 30, 2015); *O'Connell v. Comm'r of Soc. Sec.*, No. 14-13690, 2016 WL 537771, at *2-3 (E.D. Mich. Feb. 11, 2016); *Davis v. Comm'r of Soc. Sec.*, No. 1:15-CV-1652, 2016 WL 3769406, at *5 (W.D. Mich. July 15, 2016).  Here, the mention of unemployment benefits provides context and a timeframe: The ALJ notes that Dr. Allen's assessment was given "more than a year before his unemployment benefits period ended *when he testified he was capable of* working."  (R. at 25-26) (emphasis added).

### iv.    Lack of insurance

Nor should Plaintiff's asserted lack of health insurance alter the Court's conclusion.  Plaintiff points to no evidence that the 10-pound weight restriction was permanent or even long-term.  Further, although Plaintiff states generally in

his summary judgment motion that his lack of health insurance accounted for his gaps in treatment, he specifically states in his reply brief:

> Plaintiff's failure to return to his doctor's care for a year can be explained by his reliance on the doctor's 10 pound lifting restrictions, stretching exercises as directed and applications of warm moist heat 4 to 6 times per day for at least 15 minutes a time along with using over the counter Naproxen Sodium for additional pharmaceutical pain relief.  As long as he did not lift more than 10 pounds and applied heat 4 to 6 times per day he was able to tolerate the pain until it worsened in 2016 and he had to seek greater medical help.

(ECF No. 15, PageID.362.)  Plaintiff cannot have it both ways.

### v.    Specialization

The ALJ also considered, in accordance with 20 C.F.R. § 404.1527(c), the specialization of Plaintiff's treating physician, concluding that Dr. Allen was not an orthopedic specialist.  (R. at 26.)  Plaintiff does not challenge this finding, instead arguing that the finding is inconsistent because the ALJ afforded great weight to the opinion of Dr. Larry Jackson (R. at 25), who is also not an orthopedic specialist.  (ECF No. 11, PageID.321.)  But it is not within the province of this Court to reweigh the evidence.  The Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."  *Reynolds* at 414.  Moreover, although the ALJ gave great weight to the opinion of one non-specialist, it does not follow that such weight must therefore be given to all non-specialists, each of whose opinions are weighed separately, based on different records and varying internal

support.  Giving great weight to Dr. Jackson's opinion did not bind the ALJ to

giving great weight to Dr. Allen's.

### vi.     Recontacting the treating physician

The Court should also reject Plaintiff's argument that, pursuant to S.S.R. 96-

5p, the ALJ should have recontacted Dr. Allen to inquire as to the permanence of

his 10-pound lifting limitation.  (ECF No. 11, PageID.321-323.)  S.S.R. 96-5p,

rescinded effective March 27, 2017, states, "For treating sources, the rules also

require that we make every reasonable effort to recontact [treating] sources for

clarification when they provide opinions on issues reserved to the Commissioner

*and the bases for such opinions are not clear to us*."  S.S.R. 96-5p at *2 (emphasis

added).  However, the regulations governing an ALJ's duty to recontact, C.F.R. §§

404.1512(e) and 416.912(e), were amended effective March 26, 2012, rendering

the decision to recontact discretionary.  *Hollis v. Comm'r of Soc. Sec.*, No. 13-

13054, 2015 WL 357133, at *23-24 (E.D. Mich. Jan. 27, 2015) (citing *How We*

*Collect and Consider Evidence of Disability*, 77 Fed.Reg. 10,651 (Feb. 23, 2012)

(codified at 20 C.F.R. § 404.1520b)); *see also Hodgson v. Comm'r of Soc. Sec.*,

No. 2:18-cv-12285, 2019 WL 5680576, at *4 (E.D. Mich. Aug. 8, 2019).[6]

---

[6] From March 26, 2012 to March 26, 2017, the discretionary decision to recontact a
medical source was codified at 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1),
*McClaine v. Comm'r of Soc. Sec.*, No. 2:16-cv-13950, 2018 WL 1309877, at *7
(E.D. Mich. Jan. 29, 2018), *report and recommendation adopted*, No. 16-13950,

Thus, for his argument, which is largely undeveloped and may be considered waived, *Spiteri v. Colvin*, 2015 WL 7258749, at *3 (E.D. Mich. Nov. 9, 2015) (Stafford, M.J.), *report and recommendation adopted at* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.), Plaintiff relied on outdated regulations, and failed to address the discretion afforded to the ALJ.  Further, as provided in greater detail above, the ALJ properly inferred from Dr. Allen's opinion and the record evidence that Dr. Allen's 10-pound lifting limitation was a temporary recommendation that could be given little weight when making his RFC determination, negating any potential reason to recontact.  Contrary to the language of S.S.R. 96-5p, the basis for the 10-pound weight restriction – and the temporary nature of it – *was* "clear" to the ALJ.[7]

### 2.    Sentence Six Remand

Plaintiff's final argument is that he is entitled to a Sentence Six remand for the ALJ to consider the report from an MRI taken July 24, 2018, because "Dr. Luciano ordered the test when he felt it was necessary to be administered which happened to occur about one month after the [disability] decision was made" (ECF No. 15, PageID.363-364), and "it pertains to a spinal condition during the period of

---

2018 WL 1291126 (E.D. Mich. Mar. 13, 2018), but is now codified at 20 C.F.R. §§ 404.1520b(b)(2)(*i*), 416.920b(b)(2)(*i*).

[7] Plaintiff also cites S.S.R. 17-4p in support of his argument, which does not discuss any duty to recontact a treating decision.

time that the ALJ had under review and it was submitted as soon as it was taken to

the Appeals Council" (ECF No. 11, PageID.325-326).  The Commissioner argues

that there is no basis for remand because Plaintiff failed to demonstrate that the

evidence is material or could not have been obtained earlier.  (ECF No. 14,

PageID.352-355.)

### a.    Standard

"It is well established that the party seeking remand bears the burden of

showing that a remand is proper under Section 405."  *Oliver v. Sec'y of Health and

Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).  In a Sentence Six remand,

"[t]he district court does not affirm, modify, or reverse the Secretary's decision[,]"

and "it does not rule in any way as to the correctness of the administrative

determination."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Rather,

> [T]he court remands because new evidence has come to light that was
> not available to the claimant at the time of the administrative
> proceeding and that evidence might have changed the outcome of the
> prior proceeding. . . .   The statute provides that following a sentence
> six remand, the Secretary must return to the district court to "file with
> the court any such additional or modified findings of fact and
> decision, and a transcript of the additional record and testimony upon
> which his action in modifying or affirming was based."  42 U.S.C. §
> 405(g).

*Melkonyan*, 501 U.S. at 98 (internal citation omitted) (emphasis added).  "To

obtain a sentence-six remand, a claimant has the burden to establish that there is

(1) new evidence; (2) which is material; and (3) that there is good cause for the

failure to submit it to the ALJ."  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 717 (6th Cir. 2013).

For the purposes of a remand under Sentence Six, evidence is new "only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'"  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  A claimant satisfies his or her burden of proof as to materiality by demonstrating that "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  A claimant's condition and treatment subsequent to the date of decision is intrinsically irrelevant.  *See Id.* at 712.  Rather, "[t]he evidence must . . . relate 'to the period on or before the date of the administrative law judge hearing decision.'"  *See Kerspilo v. Comm'r of Soc. Sec.*, No. 13-CV-14476, 2015 WL 1469461, at *3 (E.D. Mich. Mar. 19, 2015) (citing 20 C.F.R. § 404.970).

Finally, a plaintiff demonstrates good cause by "giv[ing] a valid reason for his failure to obtain evidence prior to the hearing."  *Oliver*, 804 F.2d at 966; *see also Foster*, 279 F.3d at 357 ("A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for

inclusion in the hearing before the ALJ.")  The Sixth Circuit takes a "hard line" on the issue of good cause.  *Oliver*, 804 F.2d at 966.

### b.    Analysis

Plaintiff submitted to the Appeals Council a report from an MRI taken July 24, 2018 (R. at 15), approximately one month after the ALJ issued his disability decision (R. at 17-28).  The MRI showed "relatively mild" degenerative disc disease at L4-5, and mild to moderate degenerative disc disease at L5-S1.  (R. at 16.)  The Appeals Council rejected the additional evidence, stating:

> You submitted Henry Ford Health System Radiology dated July 24, 2018 (2 pages).[]  The Administrative Law Judge decided your case through June 28, 2018.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before June 28, 2018.

(R. at 2.)

The MRI results are undoubtedly new, as the MRI was taken following the ALJ's disability determination (R. at 15, 17-28.)  However, even assuming that Plaintiff has also demonstrated good cause for failing to obtain the evidence earlier, through his assertions that the health insurance company delayed the MRI (ECF No. 11, PageID.325),[8] and that the doctor ordered the test when he felt it

---

[8] *See Hickey v. Comm'r of Soc. Sec.*, No. 17-10123, 2017 WL 5710459, at *6-7 (E.D. Mich. Oct. 30, 2017), *report and recommendation adopted*, No. 17-10123, 2017 WL 5667977 (E.D. Mich. Nov. 27, 2017) (finding good cause where the plaintiff testified at the hearing to being without health insurance for a period of time and getting switched to a new doctor after her insurance was reinstated).

necessary (ECF No. 15, PageID.363), Plaintiff has failed to satisfy his burden of proof as to materiality.  He asserts that the MRI "shows conclusively the cause of the alleged pain but also supports the plaintiff's testified to limitations from the pain." (ECF No. 15, PageID.363.)  However, the ALJ found Plaintiff's degenerative disc disease to be an impairment at Step 2, taking that impairment into account to determine Plaintiff's RFC (R. at 22-26), and the July 2018 MRI report does not address any specific functional limitations, let alone any limitations that would mandate restrictions beyond those the ALJ found in his decision.  *See Haack v. Comm'r of Soc. Sec.*, No. 2:16-cv-14304, 2018 WL 4906805, at *4 (E.D. Mich. Mar. 20, 2018), *report and recommendation adopted*, No. 16-cv-14304 (E.D. Mich. Sept. 28, 2018) ("[A] review of Dr. Berker's report reveals that it does not address any specific functional limitations, and Plaintiff has failed to explain whether or how this report mandates further restrictions than already found by the ALJ in her decision below.").  Accordingly, the Court should find that Plaintiff is not entitled to a Sentence Six remand.

### F.    Conclusion

Plaintiff has the burden of proof on his statements of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the

ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 11), **DENY** Plaintiff's request for a Sentence Six remand, **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

27

objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 23, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE